No. 16-2307

# United States Court of Appeals
# for the Federal Circuit

In re: OPENINGS, dba Total Door,

*Appellant.*

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK
OFFICE, TRADEMARK TRIAL AND APPEAL BOARD,
IN SERIAL NO. 86044043

## REPLY BRIEF FOR APPELLANT
## OPENINGS, dba TOTAL DOOR

Meredith Martin Addy
  *(Principal Counsel)*
Daniel I. Konieczny
TABET DIVITO & ROTHSTEIN LLC
The Rookery Building
209 S. La Salle St., 7th Floor
April 10, 2017          Chicago, IL 60604

*Counsel for Appellant Openings, dba Total Door*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Appellant Openings, dba Total Door certifies the following:

1.      The full name of the party represented by me is:

   Openings, Inc. dba Total Door

2.      The name of the real party in interest represented by me is:

   TD IP HOLDCO, LLC

3.      All parent corporations and publicly held companies that own 10 percent or more of the stock of the party represented by me are:

   TD HOLDCO, LLC

4.      The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

   Paul E. Rauch, Ph.D. of Evan Law Group, LLC

Dated:  April 10, 2017          By:  /s/ Meredith Martin Addy

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................i

INTRODUCTION ..............................................................................1

ARGUMENT ....................................................................................3

I.   The Director Improperly Endorses the TTAB's Legal Error by
     Ignoring Half of the *Morton-Norwich* Factors. .........................................3

     A.   *TrafFix* Did Not Hold That Evidence Relevant to Non-
          Functionality May Be Ignored. ...............................................................4

     B.   *Valu Engineering's* Interpretation of *TrafFix* Contradicts
          the Director's Contentions. ............................................................6

     C.   *Becton, Dickinson* Also Did Not Allow Functionality
          Evidence to Be Ignored. ....................................................................8

     D.   The Director's Brief Contradicts the TTAB Decision,
          which Expressly Held That the TTAB "Need Not"
          Consider the Totality of the Evidence. ...........................................9

     E.   By Ignoring Evidence of Alternative Designs, the TTAB
          Violated Administrative Law Requirements That It
          Address All Evidence. ....................................................................10

     F.   The TTAB's Failure to Consider All Evidence Was Not
          Harmless Because That Evidence Demonstrates Non-
          Functionality. ..................................................................................11

          1.   The Director's Attack on Total Door's Unrebutted
               Evidence of Alternative Designs Is Both Incorrect
               and Irrelevant. ........................................................................13

          2.   The Director's Attack on Total Door's Unrebutted
               Evidence of the Lack of Manufacturing Advantages
               Is Both Improper and Speculative. ........................................14

          3.   The Director's Alleged Evidentiary Shortcomings
               Cannot Be Raised for the First Time on Appeal. ................15

G.    Contrary to the Director's Assertions, Analysis of Design Patent Law Provides Additional Techniques for Evaluating Functionality That Compliment Trademark Law. ...................................................................................16

II.   The Director Fails to Identify any Evidence in the Expired Patents or in the Advertising That Indicates the U-shaped Design of a Locking Channel Is Functional. ..........................................17

A.    The Patents Fail to Support the Alleged Functionality of the U-shaped Design.........................................................................18

B.    Registration of the U-Shaped Design Does Not Allow Total Door to Recapture Patented Subject Matter.......................22

C.    Total Door's Advertising Does Not Support the Alleged Functionality of the U-Shaped Design of the Locking Channel. ...........................................................................................23

D.    Total Door Has Not Waived Its Arguments About Acquired Distinctiveness – the TTAB Simply Ignored the Evidence.........................................................................................25

CONCLUSION ..................................................................................................27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*In re Becton, Dickinson & Co.,*
675 F.3d 1368 (Fed. Cir. 2012) ................................................................*passim*

*In re Chapman*,
595 F.3d 1330 (Fed. Cir. 2010) ........................................................................11

*Deckers Corp. v. United States,*
752 F.3d 949 (Fed. Cir. 2014) ............................................................................8

*Galen Med. Assocs., Inc. v. United States,*
369 F.3d 1324 (Fed. Cir. 2004) ........................................................................14

*Hale v. Department of Transp., F.A.A.,*
772 F.2d 882 (Fed. Cir. 1985) ..........................................................................16

*Inwood Labs., Inc. v. Ives Labs., Inc.,*
456 U.S. 844 (1982) .............................................................................................4

*In re Lee,*
277 F.3d 1338 (Fed. Cir. 2002) ........................................................................10

*Miller v. Eagle Mfg. Co.,*
151 U.S. 186 (1894) ...........................................................................................21

*In re Morton-Norwich Prods., Inc.,*
671 F.2d 1332 (C.C.P.A. 1982) ...............................................................*passim*

*O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.,*
521 F.3d 1351 (Fed. Cir. 2008) ................................................................. 16-17

*Perfect Surgical Techniques, Inc. v. Olympus America, Inc.,*
841 F.3d 1004 (Fed. Cir. 2016) ........................................................................12

*Personal Web Techs., LLC v. Apple, Inc.,*
848 F.3d 987 (Fed. Cir. 2017) .................................................10, 11

*Qualitex Co. v. Jacobsen Prods. Co.,*
514 U.S. 159 (1995) .......................................................................23

*In re Teledyne Indus., Inc.,*
696 F.2d 968 (Fed. Cir. 1982) ........................................................4

*Timken U.S. Corp. v. United States,*
421 F.3d 1350 (Fed. Cir. 2005) .....................................................11

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.,*
532 U.S. 23 (2001) ..................................................................*passim*

*Valu Eng'g, Inc. v. Rexnord Corp.,*
278 F.3d 1268 (Fed. Cir. 2002) ...............................................1, 7, 9

*In re Vogel,*
422 F.2d 438 (C.C.P.A. 1970) .......................................................21

**Statutes**

15 U.S.C. §12(a) ...............................................................................26

**Other Authorities**

Manual of Patent Examining Procedure § 804 .................................21

Trademark Manual of Examining Procedure § 1202.02(b) ....................... 25-26

# **INTRODUCTION**

The Director fails to effectively rebut either of the two independent legal errors established by Total Door, each of which requires reversal.

*First*, the Director repeats the TTAB's error by erroneously contending that it is not necessary to consider the totality of the evidence, based on all four of the *Morton-Norwich* factors. However, under well-established law, all evidence presented must be considered. *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33 (2001); *In re Becton, Dickinson & Co.*, 675 F.3d 1368, 1372 (Fed. Cir. 2012); *Valu Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1273 (Fed. Cir. 2002). The TTAB's legal error in disregarding the totality of the evidence was not harmless. The unrebutted Yulkowski declaration describes several equally advantageous alternatives to the U-shaped design, which were also disclosed in the patents, and it explains that the distinctive U-shaped design is how consumers identify Total Door's products. The disregarded advertising evidence provides "look-for" advertisements further demonstrating the non-functionality of the proposed mark. The TTAB's failure to consider this evidence independently requires reversal.

1

*Second*, the Director continues the TTAB's legal error by endorsing the TTAB's erroneous patent interpretation and conflating the U-shaped design of a locking channel depicted in the mark with the generic channel claimed in the patents.  To the contrary: (1) the claims in the patents are directed to a "locking mechanism" that includes several elements of which one is a channel, and (2) the claimed channel element is not limited to the U-shaped design depicted in Total Door's design mark.  However, the Director bases its entire brief on this erroneous claim analysis, which supports the TTAB's incorrect conclusion that the U-shaped design of a locking channel is functional.  Moreover, applying this erroneous claim analysis, the TTAB also erred in its consideration of selective advertisements.  The TTAB's importation of the U-shaped channel into the expired patent claims alone is error requiring reversal of the adverse decision on Total Door's design mark.

Contrary to the Director's arguments, nothing in the patents or in any other evidence suggests that the U-shaped design of a locking channel, as distinguished from a locking channel itself, provides any functionality.  With respect to the evidence that the TTAB did not consider, the Director offers

speculation without evidentiary support in an attempt to justify the TTAB's

failure to consider it.  The Director's argument simply emphasizes that, at

minimum, the TTAB must properly develop and consider all the evidence

relevant to functionality before depriving Total Door of registration of its

non-functional, source-identifying design mark.

Therefore, the Court should reverse the TTAB's decision and provide

instructions to issue the mark.  If necessary, the Court should remand this

matter for further proceedings consistent with all evidence presented and a

proper interpretation of the relevant patents.

## **ARGUMENT**

### I.    **The Director Improperly Endorses the TTAB's Legal Error by Ignoring Half of the *Morton-Norwich* Factors.**

By ignoring half of the relevant evidence in determining functionality,

the Director has repeated the fundamental legal error committed by the

TTAB.  The functionality precedents of the Supreme Court (*TrafFix*) and this

Court (*Becton, Dickinson* and *Valu Engineering*) provide no basis for

disregarding evidence relevant to the question of functionality.

### A. *TrafFix* Did Not Hold That Evidence Relevant to Non-Functionality May Be Ignored.

Contrary to the Director's position, *TrafFix* did not hold that a functionality determination based only on patents and advertising allows the fact finder to completely disregard evidence of alternative designs. Rather, the Supreme Court held that "where the design is functional under the *Inwood* formulation there is no need to proceed further to consider if there is a competitive necessity for the feature." *TrafFix*, 532 U.S. at 33. Whether a design is functional under the *Inwood* formulation is determined by analyzing the four *Morton-Norwich* factors. *Becton, Dickinson*, 675 F.3d at 1374-75; *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1340-1341 (C.C.P.A. 1982). Therefore, it is improper to *ignore* the question of competitive necessity prior to a determination of functionality under *Inwood*, and *Inwood* itself does not preclude consideration of such evidence as part of the functionality determination in the first place. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850, n.10 (1982).

Importantly, *TrafFix* also did not hold that the existence of a utility patent precludes a registrant from claiming trade dress protection. The

Supreme Court recognized the existence of a circuit split and despite acknowledging this split, the Supreme Court specifically declined to resolve this question. *TrafFix*, 532 U.S. at 35. Since the Court's decision in *TrafFix*, none of the Federal Circuit's decisions have made such a broad holding either.

Furthermore, *TrafFix* supports reversal in this case. In *TrafFix*, the "essential feature of the trade dress" that the mark owner sought to establish and protect was also "the central *advance* claimed in the expired utility patents." *TrafFix*, 532 U.S. at 30 (emphasis added). By contrast, Total Door's U-shaped design of a locking channel is not "the central advance claimed" in any of the four utility patents on record. To the contrary, each of the four patents is directed to a door with a complex locking mechanism. Appx75-115. A locking channel is merely one element of the complex locking mechanism described and claimed in the patents. Moreover, the patents give no indication that the shape of the locking channel is "the central advance" of the claimed inventions. To the contrary, the central advances of the patents are: (1) a door with a linkage attached to the door frame and with

a locking part on its opening side ('845 pat., Appx81); (2) an improved locking mechanism ('284 pat., Appx85); (3) an improved locking channel assembly ('782 pat., Appx102); and (4) a lever or knob rotatably mounted upon the door and a linkage including a clutch operated actuator ('607 pat., Appx106).  Proper operation and locking of the door (Appx81), and features such as variable door functions (Appx90); weather, sound, and fire sealing (Appx102); and lever or knob controls (Appx110) require elements in addition to a locking channel, such as rotation stops, blocking and grip means (Appx83; Appx94), lock bars (Appx95); adjustable tongues (Appx103-04); and various linkages and actuators (Appx114).  Consequently, Total Door is not attempting to protect "the central advance" of its expired patents with its application for registration of the U-shaped design of a locking channel.

### B.    *Valu Engineering's* Interpretation of *TrafFix* Contradicts the Director's Contentions.

The Director wrongly argues that *TrafFix* abridged the determination of functionality set forth in *In re Morton-Norwich Products, Inc.*, 671 F.2d 1332, 1340-1341 (C.C.P.A. 1982).  Appellee Br. at 17.  However, this Court has

interpreted *TrafFix* differently: "we do not understand the Supreme Court's decision in *TrafFix* to have altered the *Morton-Norwich* analysis." *Valu Eng'g*, 278 F.3d at 1276. Instead, evidence of alternative designs always is relevant to the question of functionality:

> Nothing in *TrafFix* suggests that consideration of alternative designs is not properly part of the overall mix, and we do not read the Court's observations in *TrafFix* as rendering the availability of alternative designs irrelevant. Rather, we conclude that the Court merely noted that once a product feature is found functional based on other considerations there is no need to consider the availability of alternative designs, because the feature cannot be given trade dress protection merely because there are alternative designs available. But that does not mean that the availability of alternative designs cannot be a legitimate source of evidence to determine whether a feature is functional in the first place.

*Valu Eng'g*, 278 F.3d at 1276. This passage is consistent with the determination that "functionality is a question of fact and depends on the **totality of the evidence**." *Valu Eng'g*, 278 F.3d at 1273 (internal citations omitted, emphasis added). *Valu Engineering* confirmed that the four-factor *Morton-Norwich* analysis remains the proper test for functionality in the

7

Federal Circuit after *TrafFix*, and that all evidence that pertains to the question of functionality is relevant.

## C. *Becton, Dickinson* Also Did Not Allow Functionality Evidence to Be Ignored.

The Director improperly relies on *dicta* in *In re Becton, Dickinson & Co.*, 675 F.3d 1368, 1376 (Fed. Cir. 2012) to support its position that relevant evidence of functionality may be ignored. Appellee Br. at 17, 28. Although the *Becton, Dickinson* Court stated: "since the patent and advertising evidence established functionality, the Board did not need to analyze whether alternative designs exist," *Becton, Dickinson*, 675 F.3d at 1376, the totality of the opinion shows that statement to be *dicta*. Instead, in *Becton, Dickinson*, the TTAB did analyze all four *Morton-Norwich* factors before determining functionality. *See id.* at 1371-1372. Further, even if the statement in *Becton, Dickinson* is not *dicta*, it still is not controlling because, when interpreting competing panel decisions, this Court must follow the earlier precedent. *Deckers Corp. v. United States*, 752 F.3d 949, 959-66 (Fed. Cir. 2014). *Valu Engineering* issued in 2001, which is earlier than the 2012 decision in *Becton, Dickinson*. Therefore, the Court's statement in *Becton, Dickinson* did

not, and could not, change precedent as set forth in *Valu Engineering* and *Morton-Norwich*. *Morton-Norwich*, 671 F.2d at 1340-41, *Valu Eng'g*, 278 F.3d at 1276. When the totality of the evidence of functionality is not considered, the court commits legal error. *Valu Eng'g*, 278 F.3d at 1273.

### D.  The Director's Brief Contradicts the TTAB Decision, which Expressly Held That the TTAB "Need Not" Consider the Totality of the Evidence.

The Director's argument that the TTAB considered the fourth *Morton-Norwich* factor (facts indicating that the design results in a comparatively simple or cheap method of manufacturing the product) directly contradicts the TTAB's statement that it did not do so. Appellee Br. at 34-35. Instead, the TTAB plainly stated that "because the Expired Yulkowski Patents and Applicant's promotional materials establish the functionality of the proposed mark, we need not consider these [other] factors." Appx18. Although the TTAB (Appx18) and the Director (Appellee Br. at 34-35) both referred to a general statement from the '845 patent about the manufacturing costs of the entire locking mechanism, no evidence regarding the manufacturing costs of the U-shaped design was considered. This is

9

particularly troubling since the Declaration of Leon Yulkowski contains this

very evidence.  Appx68.    The Director's position that the TTAB considered

the fourth *Morton-Norwich* factor is unsupported by the facts.  Even though

Total Door provided evidence on the actual costs of manufacturing a locking

channel having a U-shaped design, Appx65-73, the TTAB chose to ignore

this evidence.  The Director cannot cure this legal error by providing its own

factual analysis of the record.

### E.    By Ignoring Evidence of Alternative Designs, the TTAB Violated Administrative Law Requirements That It Address All Evidence.

In *Personal Web Technologies, LLC v. Apple, Inc.*, this Court explained

that an agency must present "a full and reasoned explanation" of its ruling:

> [An] agency tribunal must present a full and reasoned explanation of its decision. The agency tribunal must set forth its findings and the grounds thereof, as supported by the agency record, and explain its application of the law to the found facts.

*Personal Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 992 (Fed. Cir. 2017)

(quoting *In re Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002)).  The TTAB ignored

the evidence of alternative designs as well as the evidence indicating that the

design choice does not result in a comparatively simple or cheap method of

manufacturing the product.  Appx18.  All the ignored evidence further supports the conclusion that the U-shaped design of a locking channel is not functional.  By ignoring evidence that is counter to its decision, the TTAB failed to "explain its action with sufficient clarity to permit 'effective judicial review.'"  *Personal Web Technologies*, 848 F.3d at 992-93, citing *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1355 (Fed. Cir. 2005).  Consequently, the decision by the TTAB fails to satisfy the fundamental tenets of administrative law.

In sum, the TTAB had no basis for ignoring half of the evidence that is relevant to the determination of functionality.  For all the reasons stated above and in Total Door's opening brief, the failure by the TTAB to consider the totality of the evidence is legal error.

### F.     The TTAB's Failure to Consider All Evidence Was Not Harmless Because That Evidence Demonstrates Non-Functionality.

The TTAB's legal error was anything but harmless because review of the totality of the evidence establishes that the U-shaped design is not functional. *See, e.g., In re Chapman*, 595 F.3d 1330, 1338 (Fed. Cir. 2010)

(confirming that TTAB is bound by the Administrative Procedure Act, and the harmless error rule applies). The TTAB's failure to consider all the evidence requires reversal because this Court cannot weigh the evidence for the first time on appeal. *See, e.g., Perfect Surgical Techniques, Inc. v. Olympus America, Inc.*, 841 F.3d 1004, 1012 (Fed. Cir. 2016) ("It is for the [administrative board] to reconsider the whole record and make a fact finding … in the first instance.").

Total Door's evidence of the availability of functionally equivalent designs (Appellant Br. at 38-39) and evidence regarding the cost of manufacture (Appellant Br. at 40-41) changes the determination of functionality. The TTAB failed to address, much less refute this evidence; indeed, it explicitly stated that it did not consider this evidence. Appx18. The Director fails in its attempt to rehabilitate the TTAB's legal error by performing its own analysis of Total Door's unrebutted evidence. In any event, the Director cannot ask this Court to weigh evidence for the first time on appeal. *See Perfect Surgical Techniques*, 841 F.3d at 1012; Appellee Br. at 26-31, 34-35. That should be the end of the analysis.

### 1. The Director's Attack on Total Door's Unrebutted Evidence of Alternative Designs Is Both Incorrect and Irrelevant.

Even if considered, the Director's assertions about the alternative designs being hypothetical or speculative are contrary to the record. Appellee Br. at 26-31. The Yulkowski declaration contains multiple examples of alternative designs for a locking channel that are equally feasible, efficient, and competitive with the U-shaped design of a locking channel. Appx65-73. Several alternative designs are described in the four utility patents as well. Appellant Br. at 6-7, Appx79 and Appx88. Accordingly, the Director cannot dismiss the evidence of alternative designs as hypothetical or speculative.

In addition, the Director's comments alleging lack of actual use of the alternative designs are irrelevant. Appellee Br. at 26-27 (footnote 8) and 30. Contrary to the Director's positions, actual use is not an element of the functionality determination. The second *Morton-Norwich* factor only looks to "[t]he **availability** to competitors of functionally equivalent designs." *Becton, Dickinson* at 1374-75 (emphasis added; citing *Morton-Norwich*, 671

F.2d at 1340-1341.  The Declaration of Leon Yulkowski and the four patents all provide ample evidence that functionally equivalent alternative designs of a U-shaped locking channel exist and are available to competitors. Appx69-72 and Appx75-115.   Accordingly, this *Morton-Norwich* factor demonstrates that the U-shaped design of a locking channel is not functional.

> **2.** **The Director's Attack on Total Door's Unrebutted Evidence of the Lack of Manufacturing Advantages Is Both Improper and Speculative.**

Similarly, the Director's speculation that the U-shaped design of a locking channel offers manufacturing advantages, even if considered, fails for lack of support.  For example, the Director claims that an E-shaped or W-shaped locking channel would "necessarily require additional raw material (plus labor and/or machining)."  Appellee Br. at 30.   The Director fails to provide any factual basis for this assertion.   As noted by the Director, unadorned attorney argument is not evidence.   Appellee Br. at 34, citing *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1338-1339 (Fed. Cir. 2004) and *In re Teledyne Indus., Inc.*, 696 F.2d 968, 971 (Fed. Cir. 1982).  To the

contrary of the Director's speculations, Mr. Yulkowski presented unrebutted

evidence that the U-shaped design of a locking channel does not result in a

comparatively simple or cheap method of manufacturing a locking channel.

Appx68.    Therefore, contrary to the Director's speculation, this *Morton-*

*Norwich* factor also demonstrates that the U-shaped design of a locking

channel is not functional.

### 3. The Director's Alleged Evidentiary Shortcomings Cannot Be Raised for the First Time on Appeal.

The Director's creative hypotheticals about additional evidence that

could have been provided also fail because the TTAB failed to consider the

evidence Total Door provided.  Appellee Br. at 30.  There is no requirement

for Total Door to supplement the record with, *e.g.*, cost calculations or

estimates of no manufacturing advantage, or testing of the many equally

feasible alternative designs.  To the contrary, Total Door's submission of

evidence on these issues that went unrebutted (and ignored) satisfies its

burden.  Total Door was only obligated to provide "competent evidence,"

which requires proof by a preponderance of the evidence, to rebut the

Examining Attorney's initial holding that the U-shaped design of a locking

channel was functional. *Becton, Dickinson*, 675 F.3d at 1374. Unrebutted evidence satisfies the preponderance of the evidence standard. *Hale v. Department of Transp., F.A.A.*, 772 F.2d 882, 885 (Fed. Cir. 1985).

### G.   Contrary to the Director's Assertions, Analysis of Design Patent Law Provides Additional Techniques for Evaluating Functionality That Compliment Trademark Law.

Hardly arguing for "scrapping" trademark law principles, Total Door's analogy to the functionality analysis in design patent law provides a useful tool because both areas of law prohibit registration of functional subject matter. Appellant Br. at 36-38; Appellee Br. at 33-34. The Director has failed to address the merits of this suggestion, provide any differences in the two types of functionality, or challenge the potential benefits of harmonizing the two tests of functionality. Appellee Br. at 33-34.

Similarly, the suggestion to look to principles of design patent law when analyzing the potential functionality of a mark is hardly a new issue raised on appeal, but rather is permissible additional support of Total Door's existing position. *See O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.,*

521 F.3d 1351, 1359-60 (Fed. Cir. 2008) (new or additional arguments in

support of existing position not waived); Appellant Br. at 36-38.

## II.    The Director Fails to Identify any Evidence in the Expired Patents or in the Advertising That Indicates the U-shaped Design of a Locking Channel Is Functional.

Throughout its Brief, the Director repeats the fundamental legal error

committed by the TTAB in failing to analyze the potential functionality of

the U-shaped design of a locking channel separately from the functionality

inherent in all locking channels.   This Court's predecessor explained the

importance of this distinction in the *Morton-Norwich* case: "A discussion of

'functionality' is *always* in reference to the *design* of the thing under

consideration (in the sense of its *appearance*) and *not* the thing itself."  *Morton-*

*Norwich*, 671 F.2d at 1338 (emphasis in original).   As applied to this case, the

"thing" is the locking channel, and the relevant "design" is the specific U-

shape depicted in the drawing.   The Director recognized this difference by

noting that Total Door's "arguments are limited to the U-shape design of its

locking channel."   Appellee Br. at 21 (footnote 6).   Yet, the Director endorses

the TTAB's legal error in failing to limit its own functionality analysis to the

*design* of a locking channel, rather than the locking channel itself. All the functional properties identified by the Director in the patents and the advertising are functional properties of locking channels generally, not the U-shaped design of a locking channel.

### A. The Patents Fail to Support the Alleged Functionality of the U-shaped Design.

By incorrectly asserting that functional features described in the patents result from the unclaimed U-shaped design of a locking channel, the Director erroneously relies on inherent locking channel functional properties that are unrelated to locking channel design. The Director identifies a number of functional features in the '845 patent, none of which relate to the design of the U-shaped locking channel:

- Elimination of protruding conventional door hardware, which has several benefits: (1) a more attractive outer appearance; (2) minimizes injuries from striking such protruding hardware; (3) reduces manufacturing cost.

- Sizing and mounting flexibility: The door can be mounted right or left handed in its frame by turning (the door) in known ways in whatever hand is desired. It can be cut to the needed length by cutting in customary ways without interfering with its function.

- Installation ease because customary carpenter work is eliminated in installation or mounting of the door.

- The manufacturers'/retailers' shipping and storage costs are minimized because "[t]he door is completely and economically manufactured in the factory and … [they] can be stacked one on top of the other. The good packing possibilities of the door is an advantage for shipping and dispatch."

- Increased holding strength caused by spreading applied force along the entire edge of the door makes it highly burglar-resistant. It maintains integrity under increased kicking, pry-bar, or explosive forces.

Appellee Br. at 20.   All of these features relate to the claimed locking mechanism, and the combination of several elements that comprise it, none of which requires a U-shaped design of a locking channel.  Additionally, the Director fails to cite any language in the '845 patent explaining how these functional features are the result of the U-shaped design of a locking channel.

Similarly, the Director improperly relies on the '284 patent statement that the locking channel "clos[es] off any visual space between the door and the corresponding frame."  Appellee Br. at 20.  Much like the passages from the '845 patent, this quote gives no indication that the functional features

result from the U-shaped design of a locking channel. Indeed, a locking channel of any shape would satisfy this statement.

The Director also references the '782 patent's statement that locking channels "provide a better seal against weather, sound, or fire than do conventional-lock doors." Appellee Br. at 21. Again, the Director fails to explain how that statement from the '782 patent is limited to a U-shaped design, or why it does not apply to all locking channel designs. Indeed, the Director admits that it takes additional elements, such as a sealing gasket, to further enhanc[e] weather, sound, and fire sealing." *Id.* at 21, citing '782 Pat., 1:42-44 (other citations omitted).

As the Director's own references indicate, the patents cover significantly more than a U-shaped locking channel. Rather, each of the four utility patents is directed to an entire door assembly with a complex locking mechanism, which includes a locking channel of any shape. Appx75-115. The locking channel in the claimed door assembly could be any of several possible configurations of a single element of a complex mechanical device – the claimed door assembly. To state that the expired patents are directed

to the benefits of a U-shaped design entirely misstates what the expired patents once protected – an entire locking mechanism.[1]

Regardless of whether one considers the claims or the disclosure of the patents, there is no discussion of functionality as to the U-shaped design of a locking channel, as opposed to an arbitrarily-shaped locking channel. Therefore, *Becton, Dickinson's* statement that a patent's specification can be "equally strong evidence of functionality," *Becton, Dickinson*, 675 F.3d at 1375, does not even apply here because there is no relevant evidence of functionality in the patents.

In sum, the functionality of a locking channel is unrelated to the question of whether the specific U-shaped design of a locking channel sought to be registered is functional. The Director and the TTAB have not

_____

[1] Basic principles of patent law dictate that the four patents cannot all be interpreted as claiming the U-shaped design of a locking channel since the same invention cannot be patented more than once. *Miller v. Eagle Mfg. Co.*, 151 U.S. 186, 197 (1894). Further, the prohibition on double patenting, described in § 804 of the Manual of Patent Examining Procedure, requires that the four utility patents necessarily claim distinct subject matter. *In re Vogel*, 422 F.2d 438, 441 (C.C.P.A. 1970). Accordingly, contrary to the Director's assertions, the patents don't cover or claim the U-shaped design of a locking channel.

21

presented a utility patent disclosing any utilitarian advantages of the U-shaped design of a locking channel separate from the utilitarian advantages offered by all locking channels.  Accordingly, the TTAB's conclusion that the first *Morton-Norwich* factor establishes that the U-shaped design of a locking channel is functional was legal error.[2]

### B.    Registration of the U-Shaped Design Does Not Allow Total Door to Recapture Patented Subject Matter.

The Director also incorrectly argues that registration of the U-shaped design of a locking channel would allow Total Door to obtain perpetual protection of previously patented subject matter.  Appellee Br. at 26-27 (footnote 8) and 36.  This argument is false.  Total Door's U-shaped design of a locking channel, is not claimed in any of the four patents.  Hence, the

---

[2] The Director wrongly alleges any concession that an H-shaped channel would be visible to consumers as the U-shaped design of a locking channel. Appellee Br. at 13 and 22.  Indeed, Total Door has never opined on how the H-shaped locking channel illustrated in the '284 patent would appear to consumers, and has certainly never agreed with the Examining Attorney's speculations as to its appearance.  Rather, Total Door explained that the drawings sufficiently illustrate the mark to the consumer.  Appx346-348. The Director's statements about such alleged concessions have no basis in the record.

trademark registration sought would not exclude from public use the door assembly with a complex locking mechanism originally claimed in the patents and now in the public domain.

In addition, the Director repeatedly refers to the period of exclusivity offered by the patents.  Appellee Br. at 25, 26-27 (footnote 8) and 36.  The period of patent exclusivity is not relevant to the determination of functionality since none of the four utility patents claim the U-shaped design of a locking channel.  The four utility patents never gave Total Door the power to exclude others from solely using a locking channel having a U-shaped design.  Thus, it cannot be said that registration of the U-shaped design of a locking channel mark would impermissibly extend the exclusivity offered by any of the patents as cautioned by the Supreme Court in *Qualitex Co. v. Jacobsen Prods. Co.*, 514 U.S. 159, 164-65 (1995).

### C.     Total Door's Advertising Does Not Support the Alleged Functionality of the U-Shaped Design of the Locking Channel.

The Director also incorrectly associated functional features described in Total Door's advertising as resulting from the U-shaped design of a

23

locking channel.  Appellee's Br. at 25-26.  As in the patents, the functional features identified by the Director are unrelated to the design of the locking channel and are inherent to all shapes of locking channels.  Specifically, the Director references the following functional features provided by locking channels:

- Increased security due to enhanced locking strength
- Eliminating unsightly, costly, and potentially injurious protruding hardware of traditional doors
- Lowering smoke migration
- Increasing blast resistance

Appellee Br. at 25.  The Director has not identified any portion of the advertising that indicates that these functional features result from the U-shaped design of a locking channel as distinguished from a locking channel in general of any shape.  Neither the Director nor the TTAB relied upon any advertising materials in which Total Door touts the U-shaped design of a locking channel's utilitarian advantages over other shapes of a locking channel.  Consequently, for the same reasons as the TTAB erred in its claim interpretation, the TTAB's conclusion that the second *Morton-Norwich* factor

establishes that the U-shaped design of a locking channel is functional is unsupported by substantial evidence.

### D.   Total Door Has Not Waived Its Arguments About Acquired Distinctiveness – the TTAB Simply Ignored the Evidence.

Far from waiving the argument that the U-shaped design of a locking channel has acquired distinctiveness, Appellee Br. at 31-33, Total Door timely presented the argument to the TTAB:

- Over 241,000 doors with a U-Shaped Locking Channel have been sold to over 25,000 customers since 1975;

- Total Door has educated potential customers at trade shows since 1975 that the U-Shaped Locking Channel is indicative of Total Door's products;

- Total Door uses the U-shaped Locking Channel to confirm that customers inquiring about door repair or maintenance are in fact dealing with a door manufactured by Applicant Total Door;

- Total Door has used the U-shaped Locking Channel continuously and substantially exclusively since 1975.

Submitted November 20, 2015 (Appx316) and February 8, 2016 (Appx352).

Yet, both the Examining Attorney and the TTAB ignored this evidence.

Total Door also highlighted the issue for the Examining Attorney, reminding him that § 1202.02(b) of the Trademark Manual of Examining Procedure provides:

> If the Examining Attorney fails to separately address the sufficiency of the Applicant's evidence of acquired distinctiveness, this **may be treated as a concession that the evidence would be sufficient to establish distinctiveness**, if the mark is ultimately found not to be functional.

Appx352 (emphasis added). Therefore, far from waiving acquired distinctiveness, it is a record concession made by the Examining Attorney.

In addition, contrary to the Director's assertion, the record unambiguously shows that the evidence of acquired distinctiveness is entirely independent of the evidence that the U-shaped design of a locking channel is not functional. Appx316, Appx352. Since Total Door has established that the U-shaped design of a locking channel is distinctive, no remand to the TTAB is necessary, and the mark may proceed to publication after a finding that the mark is not functional since all elements necessary for registration of trade dress have been satisfied. *TrafFix*, 532 U.S. at 28-29; 15 U.S.C. §12(a).

For all the reasons stated above and in Total Door's opening brief, Total Door has established that the U-shaped design of a locking channel has acquired distinctiveness.

## **CONCLUSION**

In sum, the TTAB legally erred by failing to consider the totality of the evidence, and by improperly interpreting the patents and conflating the U-shaped design of a locking channel depicted in the mark with the generic channel described in the patents. These harmful errors resulted in the incorrect determination that the U-shaped design of a locking channel is functional.

Total Door has shown that the U-shaped design of a locking channel is not functional under the four *Morton-Norwich* factors: (1) there are no utility patents disclosing the utilitarian advantages of the design; (2) Total Door's advertising materials do not tout the design's utilitarian advantages; (3) many functionally equivalent designs are available to competitors; and (4) the design does not result in a comparatively simple or cheap method of manufacturing the product.

The Court should reverse the TTAB's holding that the U-shaped design of a locking channel is functional. The totality of the evidence shows that the U-shaped design of a locking channel, as distinguished from a

locking channel itself, is not functional under the *Morton-Norwich* analysis,

the relevant test for functionality in the Federal Circuit.

Dated:  April 10, 2017                    Respectfully Submitted,


By:  <u>/s/ Meredith Martin Addy</u>

Meredith Martin Addy
  *(Principal Counsel)*
Daniel I. Konieczny
TABET DIVITO & ROTHSTEIN LLC
The Rookery Building
209 S. La Salle St., 7th Floor
Chicago, IL 60604

*Counsel for Appellant*
*Openings, dba Total Door*

## **CERTIFICATE OF SERVICE**

I certify that today, April 10, 2017, I electronically filed the foregoing Reply Brief for Appellant Openings, dba Total Door with the Clerk of the Court for the U.S. Court of Appeals for the Federal Circuit using the appellate CM/ECF system.  Counsel of record for all parties will be served by the appellate CM/ECF system.

April 10, 2017                    /s/ Meredith Martin Addy

## **CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains 5127 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Palatino Linotype 14-point font.

April 10, 2017                    /s/ Meredith Martin Addy